**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
650 TOWN CENTER DRIVE, SUITE 1200
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE 714-668-2443

Vince M. Verde (State Bar No. 202472)
v.verde@mpglaw.com
Keith A. Watts (State Bar No. 208491)
k.watts@mpglaw.com

Anthony L. Martin (NV State Bar No. 8177)
AMartin@lrlaw.com
Lewis and Roca, LLP
3993 Howard Hughes Parkway, Ste. 600
Las Vegas, NV 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
Admitted *Pro Hac Vice*

Attorneys for Defendant Pyramid Services, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES TRAYLOR, an individual; and ANDREW WARREN, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>PYRAMID SERVICES, INC.,<br><br>Defendant. | Case No. CV 07 4376 R (SSx)<br><br>**JUDGMENT ON PYRAMID SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT; PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' OBJECTIONS TO DEFENDANT'S EVIDENCE** |

In accordance with Federal Rule of Civil Procedure Rules 56 and 58, the Court hereby enters judgment *in favor of* Defendant Pyramid Services, Inc., and *against* Plaintiffs Traylor and Warren on each and every one of Plaintiffs' claims for damages and relief.

## I. PROCEDURAL HISTORY

### A. Initial Filings

On May 8, 2007, Plaintiffs Charles Traylor and Andrew Warren ("Plaintiffs") filed a complaint alleging failure to pay overtime wages under California Labor Code § 1194, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 217, unfair competition in violation of California Business and Professions Code § 17200, theft and conversion of labor. Plaintiffs alleged that their employer, Defendant Pyramid Services, Inc. ("Pyramid"), misclassified them as executive and/or administrative exempt employees when in fact, they were not, and thus, they were entitled to overtime wages.

Pyramid removed the case to the Federal District Court, Central District of California on July 5, 2007 (Doc. # 1). Plaintiffs filed a Motion for Remand on August 3, 2007 (Doc. # 11), which was denied (Doc. # 16).

### B. Discovery

Discovery commenced in September 2007, continued for approximately nine months, and terminated on May 16, 2008 (Doc. ## 23, 26).

### C. Summary Judgment Briefs & Plaintiffs' Evidentiary Objections

The parties stipulated to a briefing schedule for summary judgment, agreeing that moving papers would be filed on June 6, 2008, oppositions would be filed on July 7, 2008 and replies would be filed on July 14, 2008. (Doc. # 29).

In accordance with the stipulated briefing schedule, on June 6, 2008, Pyramid filed its Motion for Summary Judgment (Doc. ## 36 - 39). On the same day, Plaintiffs filed a Partial Motion for Summary Judgment (Doc. ## 31-35).

Pyramid filed its Opposition on July 7, 2008 (Doc. ## 45 - 47), as did Plaintiffs. (Doc. ## 42 - 44). Both parties filed their respective replies on July 14, 2008 (Plaintiffs – Doc. ## 50-51; Pyramid - Doc. ## 52 - 54).

On August 5, 2008, Plaintiffs filed Objections to Evidence in Support of Defendant's Motion for Summary Judgment (Doc. # 57), Objections to Defendant's Evidence in Support of Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. # 59), and Objection to Declaration of Danny Bowen Declaration in Support of Defendant's Motion for Summary Judgment (Doc. # 58) (collectively, "Plaintiffs' Objections").

On Friday August 8, 2008 Pyramid filed a Response and Request to Strike Plaintiff's Objection the Danny Bowen Declaration (Doc. # 62), and a Motion to Strike, or in the Alternative, Response to: (1) Objections to Evidence in Support of Defendant's Motion for Summary Judgment; and (2) Objections to Defendant's Evidence in Support of Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. # 60), and Appendix A thereto (Doc. # 61), which explained, clarified and corrected certain citations to the record contained in Pyramid's Separate Statement of Undisputed Facts (Doc. # 38).

## II. The Court's Rulings

The Court reviewed and considered the parties' moving, opposition and reply papers in support of summary judgment, Plaintiffs' Objections, the motion to strike and oppositions thereto. After considering the parties' respective papers, the declarations and evidence filed in support therewith, and hearing oral argument on August 11, 2008, the Court makes the following findings and conclusions of law:

### A. Plaintiffs' Evidentiary Objections

Plaintiffs' Evidentiary Objections are DENIED. The untimely objections, filed six days before the summary judgment hearing, contravened this Court's pretrial scheduling order that approved the parties' stipulated briefing schedule, in violation of Federal Rule of Civil Procedure ("Rule") 16(f)(1)(C). Further, the

filings violated the timelines mandated by Local Civil Rules 7-9 and 7-10, and violated Local Civil Rules 56-1, 56-2, 7-5 all of which preclude Plaintiffs' additional, post-briefing evidentiary objections. Plaintiffs' Evidentiary Objections shall therefore be struck in accordance with Rule 37(b)(2)(A)(iii), and Local Civil Rules 7-12 and 7-13.

Even if timely, Plaintiffs' Evidentiary Objections lack merit. The objections were merely "duplicative of the summary judgment standard itself" and thus "superfluous in [the summary judgment] context." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

### B. The Cross Motions for Summary Judgment

Pyramid's Motion for Summary Judgment is GRANTED and Plaintiffs' Partial Motion for Summary Judgment is DENIED.

#### 1. The Uncontroverted Facts

On August 11, 2008, the Court adopted Pyramid's Statement of Uncontroverted Facts filed in Support of Defendant's Summary Judgment (Doc. ## 38, 65).[1]

Plaintiffs disputed 28 facts, but failed to dispute the facts with significant probative evidence, or any evidence that would create a genuine issue of material fact to preclude summary judgment. A motion for summary judgment will not be defeated where the non-moving party fails to offer "significant probative evidence" in support of the complaint, nor will discredited testimony provide a sufficient basis for denying summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (*quoting First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290 (1968)); *see also*, *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984).

---

[1] To the extent that Pyramid's Statement of Uncontroverted Facts incorrectly cited the record evidence, the citations were corrected in Pyramid's Motion to Strike Plaintiffs' Objections to Evidence, and specifically, in Appendix A, filed concurrently therewith and incorporated herein by reference. (Doc. ## 60, 61).

In sum, the uncontroverted facts established:

1. Pyramid is a privately held government services contractor that in part provides professional fire personnel who respond to and mitigate emergencies involving hazardous materials, emergency rescues, structural fires/hazardous situations, miscellaneous fires and aircraft emergencies protection and emergency services "24/7" to the United States Air Force at Plant 42, located in Palmdale, California in accordance with the Performance Work Statement. (FACTS 1-3.) Failure to comply with the Performance Work Statement could result in Pyramid's loss of the services contract. (FACTS 2, 3.)

2. Pyramid hired Plaintiff Traylor as an Assistant Fire Chief in March 2004, and he continued in that role until his termination on February 17, 2007. (FACTS 4, 5.) Plaintiff Traylor's annual salary when he was hired was $56,555.20. At the time of Plaintiff Traylor's separation, his annual salary was $79,622.20. Plaintiff Traylor received his annual salary in equal weekly installments, regardless of the number of hours he worked in a given work week and it was never subject to improper deductions. (FACTS 9, 10.)

3. Plaintiff Warren had been employed in various capacities at Plant 42 with several different government contractors for approximately twenty years. He became an Assistant Fire Chief with Pyramid on June 1, 2006.[2] Plaintiff Warren worked as an Assistant Fire Chief until his termination on January 16, 2007. (FACTS 11, 12.) Plaintiff Warren's annual base salary as an Assistant Fire Chief was $79,622.20, which he received in equal weekly installments, regardless of the number of hours he worked in a given workweek. Plaintiff Warren's weekly salary was not subject to improper deductions. (FACT 13.)

4. As Assistant Fire Chiefs, Plaintiffs were ranked in the third highest position in the Fire Department's chain of command: (1) Fire Chief, (2) Deputy

---

[2] Plaintiff Warren only sought damages for the time period he worked as an Assistant Fire Chief, June 1, 2006, through January 16, 2007.

Chief/Training Officer, (3) Assistant Chief of Operations, (4) Station Captain, (5) Crew Chief, (6) Engineer, and (7) Firefighter. (FACT 15.)

5. Plaintiffs Traylor and Warren did not perform any manual tasks associated with the traditional role of a firefighter – i.e., neither performed any actual physical activity related to fire suppression, nor was either required to perform daily manual duties at the fire stations. (FACT 36.) In their own words, Plaintiffs "supervised all aspects of airfield, structural, confined spaces, medical, hazardous material firefighting and personnel management." They controlled the "firefighters in fire ground situations as well as the performance of care and maintenance of apparatus and equipment." In addition, they implemented management's directives and policies, and routinely evaluated the operational activities of personnel assigned to their shifts. (FACTS 34, 35.)

6. Between 14 to 15 hours of each 24-hour shift the Plaintiffs worked, they were the Senior Fire Officer on duty, responsible for the operation of the entire Fire Department. Regardless of whether Plaintiffs' superiors, the Fire Chief or the Deputy Chief, were on-site, Plaintiffs remained the fire operations personnel supervisor and supervised the 17 fire operations personnel at the two fire stations. (FACTS 25-27, 37, 85, 86.)

7. Plaintiffs' daily activities centered around preparing and ensuring the readiness of the fire fighters and equipment at Plant 42 for emergencies. For example, Plaintiffs conducted or observed daily, weekly and annual classroom and live training exercises and skills checks and ensured that the fire fighters attended and satisfactorily completed the training (FACTS 59, 60, 61, 64, 69); verified the maintenance and correct use of equipment and materials, and that inventories were conducted and reconciled as required by relevant standard operating guidelines (FACTS 78, 79); maintained and evaluated the progress of fire prevention programs by analyzing data, reviewing and preparing records and reports (FACT 55); performed random monthly inspections of the stations, vehicles and equipment each

month (FACT 58); inspected buildings, determined hazards, and supervised the development of and/or revisions to written pre-fire plans. (FACT 83.)

8. The Department responded to approximately one emergency call each 24-hour shift. Plaintiffs were the Incident Commander, assuming a command post and directing the incoming fire personnel and equipment to positions to best contain the emergency, 95% of the time. Even when the Fire Chief relieved the Assistant Fire Chief as Incident Commander (5% of the time), Plaintiffs supervised the fire operations personnel in their performance of the actual fire suppression and/or emergency medical activities. (FACTS 43-46, 49.)

9. In addition to their other responsibilities, Plaintiffs made substantial and regular contributions to the hiring or firing and advancement process through their participation on the hiring panel and promotional board, recommendations for disciplinary action, including termination, and continual evaluation of fire fighters during daily, weekly and annual training and skills checks. And, Plaintiffs' recommendations were given particular weight. (FACTS 22, 66, 70, 71, 72.)

## 2. Conclusions of Law

1. The California wage orders incorporate the federal regulations and mandate that the exemptions be analyzed "in the same manner" as under federal law consistent with the regulations. *See* 8 CAL. ADMIN. CODE § 11040(1)(A)(1), 11040(1)(A)(2) (2002).

2. In this wage and hour action, how the Plaintiffs spent their time and what duties they performed are questions of fact. *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004). Whether the duties the Plaintiffs performed qualify as exempt duties, and therefore, whether by performing those duties, Plaintiffs fall within the executive or administrative exemption, are questions of law for this Court to decide. *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005).

3. The Court finds that Plaintiffs met the five pronged test of the executive exemption under the FLSA and California law. The Court need not determine whether Plaintiffs were also exempt administrative employees under the FLSA and/or California law.[3]

To qualify for the executive exemption under 29 C.F.R. § 541.100, et seq., and 8 CAL. ADMIN. CODE § 11040(1)(A)(1)(a)-(f) the employee must: (1) (a) have the primary duty of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (b) customarily and regularly direct the work of two or more other employees; and (c) have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight; (d) customarily and regularly exercise independent discretion and judgment; and (e) be primarily engaged in the performance of these exempt duties 50% or more of the time; and (2) receive a salary equal to the greater of $455/week or two times the state minimum wage rate each week.

Plaintiffs' duties and responsibilities involved the management of the fire stations at Department 42. Plaintiffs, who spent 14 to 15 hours of each 24-hour shift as the Senior Fire Officer on-duty, and who were responsible for the operation of the entire Fire Department during that time, and, even when their superiors were on-site, remained the fire operations personnel supervisor managing 17 fire operations personnel at two fire stations, customarily and regularly directed the work of two or more employees. Plaintiffs sat on the hiring and promotional panels of the Department, recommended disciplinary action consistent with the CBA, continually evaluated the performance of the fire operations personnel, including conducting

---

[3] Plaintiffs' executive and administrative exempt job duties may also be "tacked" under 29 C.F.R. § 541.600 (2004), 29 C.F.R. § 541.708 (2005), "so that a person who performs a combination of executive and administrative duties may qualify for an exemption." *See also*, D.L.S.E. Opinion Letter, 2003.05.23, p. 5.

annual skills evaluations and other training for the fire fighters, and thus, Plaintiffs' suggestions and recommendations as to the hiring or firing and as to the advancement and promotion, or any other change of status of fire fighters was given particular weight. Plaintiffs customarily and regularly exercised discretion and independent judgment, using their own style to direct the fire fighters as the Incident Commander during emergency situations, and on a day-to-day basis during non-emergency situations. Further, they received little to no direction from the Fire Chief when it came to executing their duties. Plaintiffs were primarily engaged in performing these exempt duties, and those closely and directly related to their exempt duties, more than 50% of their working time. Finally, Plaintiffs earned a weekly salary that far exceeded the minimum remuneration requirements under state and federal law, and their salary was not subject to any improper deductions.[4]

4. Because Plaintiffs' claims for violations of the FLSA and the California Labor Code and Wage Order No. 4 fail, Plaintiffs' remaining claims for relief for violation of California Business and Professions Code § 17200, theft and conversion of labor, also fail. *See e.g., D'este v. Bayer Corporation*, 2007 U.S. Dist. LEXIS 872229, *16-17 (C.D. Cal. Oct. 9, 2007) (*citing Cai v. Fishi Café, Inc.*, 2007 U.S. Dist. LEXIS 73764 (N.D. Cal. Sept. 20, 2007)).

It is hereby ORDERED, ADJUDGED and DECREED:

1. Plaintiffs' Objections to Evidence in Support of Defendant's Motion for Summary Judgment, Objections to Defendant's Evidence in Support of Opposition to Plaintiffs' Motion for Partial Summary Judgment, and Objection to

---

[4] That Plaintiffs received amounts in addition to their pre-determined and fixed salary does not run afoul of the salary basis of pay test or destroy the exemptions. *See Boykin v. Boeing Co.*, 128 F.3d 1279, 1281 (9th Cir. 1997) (*citing* D.O.L. Opinion Wage & Hour Opinion Letter No. 1738 (April 5, 1995), D.O.L. Opinion Wage & Hour Opinion Letter No. 1737 (April 5, 1995)); *see also*, D.L.S.E. Enforcement Policies and Interpretations Manual, Section 51.6.20, "*Added Payments for Extra Work*".

Declaration of Danny Bowen Declaration in Support of Defendant's Motion for Summary Judgment are DENIED;

    2.    Pyramid's Response and Request to Strike Plaintiff's Objection the Danny Bowen Declaration, and a Motion to Strike, or in the Alternative, Response to: (1) Objections to Evidence in Support of Defendant's Motion for Summary Judgment; and (2) Objections to Defendant's Evidence in Support of Opposition to Plaintiffs' Motion for Partial Summary Judgment, and Appendix A thereto, are GRANTED;

    3.    Plaintiffs' Partial Motion for Summary Judgment is DENIED;

    4.    Pyramid's Motion for Summary Judgment is GRANTED.

Dated: September 23, 2008

_____
U.S. District Judge Manuel L. Real